UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-　　　　　　　　　　　　　　　　　　　　No.   21-cr-537-LTS

KENDALL JACKSON and JOHNNY
STEVENS,

        Defendants.

-------------------------------------------------------x

### MEMORANDUM ORDER

Defendants Kendall Jackson and Johnny Stevens ("Defendants") have filed a letter motion concerning the classification of discovery material under the terms of a protective order.  The Court has considered carefully the parties' submissions and arguments and, for the following reasons, Defendants' motion is denied.

### BACKGROUND

On August 25, 2021, Defendants were indicted on narcotics conspiracy charges under 21 U.S.C. sections 841(a)(1) and 841(b)(1)(A).  (Docket entry no. 1.)  The indictment charges that they conspired to possess and distribute crack cocaine.  (Id.)  According to the Government, the evidence in this case includes law enforcement reports and video recordings of controlled purchases of narcotics by an undercover law enforcement officer ("the UC"), who is alleged to have completed nine drug purchases from the Defendants between December 2020 and May 2021.  (Docket entry no. 33.)

On November 5, 2021, the Court entered a stipulated Protective Order ("the Order") which restricts the handling of confidential disclosure materials. (Docket entry no. 21.)

The Order delineates two categories of confidential disclosure materials: Protected Material and Sensitive Material.  (Docket entry no. 21, at 1-2.)  Protected Material is defined as information that affects the privacy or safety of individuals and could impede ongoing investigations if disseminated.  (Id. at 1.)  The Order provides that Protected Material may not be disclosed to the public "beyond that which is necessary for the defense of this criminal case."  (Id.)  Sensitive Material, defined as "information that identifies, or could lead to the identification of, witnesses who may be subject to intimidation or obstruction, and whose lives, persons, and property, as well as the lives, persons, and property of loved ones, will be subject to risk of harm absent the protective considerations" set out in the Order, is subject to further restrictions.  (Id. at 2.)  The Order provides that Sensitive Material "should be reviewed by the defendants only in the presence of counsel" and that Defendants "should not maintain, retain, or keep copies of any records containing such Sensitive Material outside of the presence of counsel."  (Id.)  Neither Sensitive Material nor Protected Material may be disclosed to the media or to third parties unrelated to the case.  (Id. at 1-3.)  The Order further provides that the Government's designation of materials as either Sensitive or Protected "shall be controlling absent contrary order of the Court."  (Id. at 2.)

On January 23, 2022, Defendant Stevens filed the instant motion seeking a judicial determination of whether certain video footage recovered from the UC, which the Government has designated as Sensitive Material, should instead be classified as Protected Material under the Order.  (Docket entry no. 30.)  Defendant Jackson joined in the motion.  (Docket entry no. 32.)  The Government filed a response in opposition, and Defendant Stevens filed a reply.  (Docket entry nos. 33, 34.)

DISCUSSION

Rule 16(d) of the Federal Rules of Criminal Procedure governs the entry and modification of protective orders, and provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). This Rule "grants district courts the discretion to establish conditions under which the defense may obtain access to discoverable information." United States v. Smith, 985 F. Supp. 2d 506, 522 (S.D.N.Y. 2013) (citation omitted). The party seeking a protective order "has the burden of showing that good cause exists for issuance of that order," and "good cause remains the standard even where parties consent to a stipulated protective order." Id. at 522-23 (citations and quotation omitted). See also United States v. Ramirez, No. 21-CR-41-AJN, 2021 WL 914457, at *1 (S.D.N.Y. Mar. 10, 2021) (under Rule 16(d), "[t]he party seeking to restrict disclosure bears the burden of showing good cause"). In the instant case, because the Government is the party seeking to restrict the defense's access to the materials in question, the Government bears the burden of showing good cause to support the level of protection it proposes.

A party can demonstrate good cause for the issuance of a protective order "when a party shows that disclosure will result in a clearly defined, specific and serious injury"—such as compromising the "privacy interests of innocent third parties," causing a risk of harm to law enforcement or others, or "imped[ing] ongoing [government] investigations." Smith, 985 F. Supp. 2d at 523-24, 530 (citations and quotations omitted); see also United States v. Urena, 989 F. Supp. 2d 253, 262 (S.D.N.Y. 2013) (noting that courts commonly enter Rule 16 protective orders as a "means of protecting witness identity," and that courts should take into account "the safety of witnesses and others, [or] a particular danger of . . . witness intimidation" ) (citations

omitted); Ramirez, 2021 WL 914457, at *1 ("The good cause standard requires courts to balance several interests, including whether dissemination of the discovery materials inflicts hazard to others [and] whether imposition of the protective order would prejudice the defendant.") (citation omitted).

At issue here are nine video recordings made by the UC that allegedly depict Defendants selling narcotics to the UC. The videos were secretly recorded by use of a hidden camera, and the UC is not visible in the videos (although the UC's voice can be heard). The Defendants are both visible in the videos, as is another individual (the "Informant") who allegedly introduced the UC to the Defendants. The length of the combined video footage is approximately ten hours. The Government has designated these videos as Sensitive (meaning that the videos may only be viewed by Defendants in the presence of counsel and that copies cannot be provided to Defendants). Defendants agree that the videos warrant Protected status, under which Defendants are prohibited from providing access to the media or third persons, and from posting them on the internet, but argue that the Government has not shown good cause for the Sensitive designation, which restricts Defendants from viewing the video outside of the presence of their Counsel and prohibits them from possessing copies of the videos.

To justify these restrictions, the Government cites the well-recognized strong public interest in protecting the safety of its undercover officers and informants as good cause for the Sensitive designation. The Government represents that the UC involved in this case continues to work in undercover capacities with drug traffickers, and that disclosure of the UC's identity could place the UC in serious danger. The Government argues that, if Defendants, who have both been released on bail, were permitted to possess and view these videos at their leisure, they could easily place the UC and the Informant, whose voices and, in the case of the Informant,

image, are documented in the videos, at greater danger by circulating this additional identifying information to others who have not heard the individuals' voices or seen them first hand. Defendants could, for instance, share portions of the videos with others in an attempt to warn other drug traffickers not to associate with the UC or the Informant.

According to Defendants, the Government's stated concerns regarding potential identification of the UC and Informant are exaggerated, because (1) the videos only feature the UC's voice and not the UC's appearance; (2) the videos indicate that Defendants, the UC, and the Informant already knew one another (meaning that Defendants could have leaked these identities long ago, had they so desired); and (3) there is no indication that the Defendants would be willing to engage in such leaking, which could subject them to contempt and prosecution for witness tampering under the Order. In light of these alleged deficiencies, Defendants argue that the Government has not made a sufficiently specific showing of good cause for the heightened protections.

Defendants submit that the Protected classification is sufficient to address the danger of further dissemination and that they will be hampered in their legitimate use of the videos for trial preparation by the possession restrictions which attach to Sensitive information. Defendants represent that the individual defendants will need to watch the videos carefully, in their entirely, often stopping and replaying portions in order to take notes, to properly assist counsel in preparing their defense, and that it would be an unreasonable allocation of legal resources to require an attorney to sit together with each Defendant for hours on end while they watch the videos. Defendants further argue that such arrangements would be especially unreasonable in light of the ongoing pandemic, from a health and safety perspective.

The Court concludes that the Government has identified sufficient considerations to establish good cause for its "Sensitive" designation of the videos and the concomitant additional restrictions on Defendants' access to them. Defendants do not contest the Government's proffer that the UC is engaged in ongoing undercover law enforcement activity in which the effectiveness of the Government's operations—and the personal safety of the UC—are dependent on the UC's continued ability to conceal their identity and affiliation. Although the Defendants have seen the UC, and are apparently acquainted with the Informant, it stands to reason that the ability to disseminate samples of voices and images of these individuals that definitively tie them to involvement in law enforcement activity would increase substantially the risk that people who have not previously heard their voices or seen them could recognize them as law enforcement. Their investigative work could be thwarted and their lives subjected to danger in a greater range of circumstances than the level of risk they currently face from dissemination of descriptive or identifying information that is not corroborated by the video evidence.

Defendants' attempts to characterize these concerns as speculative or conclusory are unavailing. To show good cause, the Government does not have to demonstrate that these particular defendants will certainly disseminate the videos and certainly put the UC and the Informant in danger. It is sufficient that the Government has identified means by which and circumstances in which the misuse of the information could realistically jeopardize key law enforcement and safety interests in relation to the ongoing activities of these individuals. See, e.g., United States v. Bin Laden, No. 98-CR-1023-LBS, 2001 WL 66314, at *1 (S.D.N.Y. Jan. 26, 2001) (approving Rule 16 restrictions on discovery material upon "credible showing of danger" to individuals); Urena, 989 F. Supp. 2d at 262 ("[I]t is obvious that [a protective order] would be appropriate where there is reason to believe that a witness would be subject to physical

or economic harm if his identity is revealed.") (citation omitted); United States v. Kerik, No. 07-CR-1027-LAP, 2014 WL 12710346, at *2 (S.D.N.Y. July 23, 2014) (Rule 16 protective order was warranted where the documents at issue contained "details about the Government's criminal investigations including information about cooperating witnesses" because "[d]isclosure of these documents might reveal investigatory tactics and might also discourage potential cooperators in ongoing or future Government investigations").

Defendants' remaining objections to the heightened "Sensitive" designation of the videos center on inconvenience. While it is true that there will be additional professional time associated with Defendants' review of the videos under the supervision of counsel (and the need for appropriate health and safety precautions if the review is done in person), these considerations are insufficient to overcome the Government's demonstration of good cause for the restrictions. A minor burden or inconvenience for Defendants cannot outweigh the potential of danger to law enforcement or informants. See Ramirez, 2021 WL 914457, at *1 - *2 (concluding that the defendants' concerns about the "degree of burden" associated with reviewing the "Sensitive Disclosure Material" were outweighed by the Government's security concerns, because "Defendants' possession of these materials—which include recordings that would confirm the identification of [undercover agents] . . . would enervate the risk that the materials would be used to identify these individuals and establish their relationship to law enforcement, that the materials could inadvertently be misplaced, [or] that the materials could be intentionally circulated to others"). Finally, as for Defendants' health and safety concerns, the

Government correctly notes that the Order does not contain any restrictions that would limit Defendants' ability to review the videos with their attorneys via video conference.[1]

Defense counsel is reminded to thoroughly review all of the restrictions imposed by the Order (and especially the restrictions on Sensitive Materials) with the Defendants prior to sharing with them any material governed by the Order.

CONCLUSION

For the foregoing reasons, Defendants' application for classification of the subject videos as "Protected Material" is denied and the Government's classification of the material as "Sensitive Material" stands.  Docket entries no. 30 and 32 are resolved.

SO ORDERED.

Dated: New York, New York
February 25, 2022

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[1]  In such a remote-viewing scenario, Defendants' counsel should utilize appropriate measures to prevent surreptitious recording of the videos—such as requiring Defendants to turn their cell phones off and place them where they are visible to counsel.