UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                                             No.   21-CR-537-LTS

KENDALL JACKSON,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

        The issue before the Court is whether Defendant Kendall Jackson, who has been released pending trial under conditions including electronic monitoring, should be held liable for the cost of his damaged location monitoring equipment.  The Court has considered carefully the submissions and arguments from the Government, Pretrial Services, and the Defense, and, for the following reasons, it is ordered that Mr. Jackson must pay the cost of the damaged equipment.

## BACKGROUND

        On August 25, 2021, Mr. Jackson was indicted on narcotics conspiracy charges under 21 U.S.C. sections 841(a)(1) and 841(b)(1)(A).  (Docket entry no. 1.)  He was arrested on September 30, 2021, and appeared for an initial presentment before Magistrate Judge Gorenstein, who, after hearing arguments, ordered Mr. Jackson's pretrial release.  One of the conditions of Mr. Jackson's pretrial release is home detention, enforced by electronic monitoring.

        Since that time, Mr. Jackson has been living at his mother's apartment, where his half-brother and half-sister also reside.  During the evening of May 20, 2022, an altercation

occurred between Mr. Jackson and his family, which resulted in serious damage to Mr. Jackson's home monitoring unit. According to his family, the argument began after Mr. Jackson "punched a neighbor without provocation," whereupon his family told him to leave the house and take his monitoring unit with him, and Mr. Jackson then smashed the unit out of anger. (PTS Mem. at 3.) According to Mr. Jackson, the argument began while he was standing in the hallway outside the apartment, while his mother was yelling at him from the doorway. His mother "yelled at him to leave the apartment and threw" the monitoring unit at him, which then "hit the wall outside the apartment and then the hard tile floor," causing it to break. (Def. Sub. at 1.) Mr. Jackson immediately contacted his Pretrial Services Officer to report what had happened.

Following the altercation, Pretrial Services filed a memorandum with the Court on June 1, 2022, explaining that Mr. Jackson's monitoring unit had been damaged in an altercation, and recommending certain modifications to Mr. Jackson's bail conditions as a result. One of the recommendations was that Mr. Jackson be required to pay for the replacement cost of the damaged equipment—which is $1,500.00. The Government joins in this request. Mr. Jackson opposes this request, asserting that he should not be held financially liable for the damage.

## DISCUSSION

The Government and Pretrial Services maintain that Mr. Jackson is liable for the cost of the damaged monitoring unit under the terms of an agreement that he signed when he began his home detention program. The Location Monitoring Participant Agreement ("the Agreement"), which is signed by Mr. Jackson and dated October 27, 2021, contains the following relevant provisions:

> **1**. I, Kendall Jackson . . . have been placed in the Location Monitoring Program with the use of radio frequency. I agree to comply with all program rules set forth

in this Agreement and with the instructions of my supervising officer. Failure to comply with this Agreement or the instructions of my officer will be considered a violation of my supervision and may result in adverse action.

**8**.  I agree to allow a monitoring device (base unit) to be placed in my residence. I (and others at the residence) will not move, disconnect, or tamper with the monitoring device. I agree to allow authorized personnel to inspect all equipment used for my monitoring.

**9.**  I acknowledge receipt of monitoring device number _____ and ankle transmitter number ___. I understand that I will be held financially responsible for damage, other than normal wear and tear, to the equipment.

**11**.  I acknowledge that I have received a copy of this Agreement and that it has been explained to me. I understand that I must comply with this Agreement until I am discharged from the location monitoring program. I further understand that any violation of this Agreement will constitute a violation of my supervision and may result in an immediate adverse action.

Exhibit A (docket entry no. 41-1.)

The Government and Pretrial Services assert that, under the plain language of the Agreement, Mr. Jackson had a duty to care for his monitoring equipment, and that he is liable for any and all damage sustained to the equipment.  See In re Coudert Bros., 487 B.R. 375, 389 (S.D.N.Y. 2013) (citation omitted) ("A written agreement that is clear, complete, and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties.").  Mr. Jackson disputes this characterization and asserts that he should not be held liable because the Government has not proven that he was the person who caused the damage.

The Court concludes that, taken together, the provisions of the Agreement impose financial liability on Mr. Jackson for the damage sustained to his home monitoring unit on May 20, 2022.  Even if (as Mr. Jackson claims) Mr. Jackson's family members played a role in damaging the unit, Mr. Jackson is still liable for repaying the cost of the damage.  Paragraph ¶ 8 of the Agreement makes clear that the supervisee is responsible for ensuring that "others at the

residence" do not "move, disconnect, or tamper with" the unit.  Further, ¶ 9 of the Agreement provides that the supervisee is "financially responsible" for any damage to the unit "other than normal wear and tear."  The Agreement does not include any exceptions for accidental damage or damage that is not the fault of the supervisee—therefore, Mr. Jackson is still liable even if the damage was caused by others.  Finally, as made clear in ¶ 1 and ¶ 11 of the Agreement, any failure to comply with the terms of the Agreement puts Mr. Jackson at risk of violating the terms of his pretrial supervision and may result in "immediate adverse action."

Mr. Jackson also argues that the Agreement is impermissibly vague and unenforceable, because ¶ 9 omits a material term—namely, it does not specify the device number of the home monitoring unit that was assigned to him.  This argument is unpersuasive.  In support of his argument, Mr. Jackson cites the general proposition that a contract may be unenforceable when it is missing an essential term.  See, e.g., Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981) ("[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."); Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 93 N.Y.2d 584, 586 (1999) (finding that no enforceable agreement existed when the offeror omitted several key contract terms such as important dates and rent prices).

Mr. Jackson, however, does not explain why the serial number of his home monitoring unit constituted a material term of the Agreement.  A "material term" in a contract is "[a] contractual provision dealing with a significant legal issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done," Berkson v. Gogo LLC, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015) (citation omitted), which a party would "reasonably regard as a vitally important element of their bargain."  17A Am. Jur. 2d Contracts § 183 (2022).  Although

the Agreement does leave a blank spot for the serial number, it does not follow that the serial number is vitally important to the contract as a whole, and the contract would continue to serve its core functions even with the serial number omitted.[1]  Thus, because this minor omission was not material to the contract as a whole, the Agreement remains valid and enforceable.  See Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc., 807 F. Supp. 1007, 1020 (S.D.N.Y. 1992) (explaining that, although "[a]ll materials terms of the contract must be definite . . . the fact that numerous non-materials terms remain to be negotiated does not undermine the binding effect of an otherwise valid contract").

The Court accordingly orders that Mr. Jackson's bail conditions be, and hereby are, modified to require payment of the replacement cost of the home monitoring unit, which is $1,500.00.  Payment shall be made in installments if necessary, as directed by the Pretrial Services Office.

## CONCLUSION

For the foregoing reasons, Mr. Jackson is ordered to pay the replacement cost of his damaged home monitoring unit.  A pretrial conference in this case remains scheduled for July 8, 2022, at 11:00 am.

SO ORDERED.

Dated: New York, New York
       June 24, 2022

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[1] As explained in the Violation Memo prepared by Pretrial Services, the serial number of Mr. Jackson's assigned home monitoring unit was #2106159.  Mr. Jackson does not dispute the accuracy of this statement.