UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                                No.   21-CR-537-LTS

KENDALL JACKSON,

       Defendant.

-------------------------------------------------------x

## ORDER

Pending before the Court is Kendell Jackson's[1] second renewed motion, pursuant to 18 U.S.C. section 3582(c)(1)(A)(i), for a reduction of his sentence of 27 months of imprisonment to time served. (Docket entry no. 123.) The Court has reviewed the parties' submissions carefully and, for the following reasons, the motion is granted.

## BACKGROUND

On August 25, 2021, Mr. Jackson was charged in a one-count indictment with conspiring to distribute and possess with intent to distribute 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, known colloquially as "crack cocaine," in violation of 21 U.S.C. sections 841(a)(1), 841(b)(1)(A), and 846. (Docket entry no. 2.) The charge stemmed from an undercover law enforcement operation, pursuant to which Mr. Jackson and a co-defendant sold a total of approximately 328 grams of crack cocaine to an undercover law enforcement officer on nine separate occasions between December 2020 and May 2021. (See docket entry no. 85 ("PSR") at 6-7.) On January 4, 2023, Mr. Jackson pleaded

---

[1]     The true spelling of Mr. Jackson's name is "Kendell." (See docket entry no. 105 ("Sent. Tr.") at 3-5; docket entry no. 93 ("J&C") at 2.) The Court uses that correct spelling in the body of this Order.

guilty to the lesser-included offense of conspiring to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of cocaine base, in violation of 21 U.S.C. sections 841(a)(1), 841(b)(1)(C), and 846.  (PSR at 26.)  Mr. Jackson was remanded into custody and confined at the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn") following his change of plea hearing.  (PSR at 6.)

On May 24, 2023, Mr. Jackson was sentenced by this Court to a below-guidelines custodial term of 27 months, to be followed by three years of supervised release.  (Docket entry no. 93 ("J&C").)   The U.S. Probation Office had calculated the federal sentencing guidelines range as 100 to 125 months of imprisonment, and Mr. Jackson had stipulated to a guidelines range of 87 to 108 months in his plea agreement.  (PSR at 26-27, 33.)  Consistent with the parties' request, the Court used as a reference point in connection with its analysis of the factors established by 18 U.S.C. section 3553(a) the guidelines range that would have been applicable to an offense for powder cocaine, which was 30 to 37 months, in determining the sentence to be imposed.  (Docket entry no. 105 ("Sent. Tr.") at 22-23, 30 (explaining that the Court is "mindful of the issues surrounding the guideline sentencing disparities for crack cocaine versus powder cocaine").)

As detailed by the Court at Mr. Jackson's sentencing hearing, facts considered by the Court in reaching its determination to impose a sentence of 27 months of imprisonment included: (1) the seriousness of Mr. Jackson's offense conduct;[2] (2) his significant criminal history, which included "numerous prior convictions," violent domestic disputes, and "numerous

---

[2]  The Court recognized in this connection that the drug transactions that gave rise to the instant conviction "were made at the initiation and request of the undercover officer, and that the undercover officer also asked Mr. Jackson to supply larger quantities of drugs and a gun, and Mr. Jackson refused those requests."  (Sent. Tr. at 22.)

brief or probationary terms of incarceration" that did not deter Mr. Jackson from continuing to commit illegal conduct; (3) Mr. Jackson's generally poor adjustment to pretrial supervision, including numerous missed mental health counseling sessions, at least 42 separate incidents of curfew violations,[3] and an altercation that resulted in damage to his home monitoring unit; (4) his maintenance of employment and successful completion of 12 sessions of anger management during pretrial supervision; (5) his relationships with, and obligations to, his six children; and (6) the positive steps taken during his detention at MDC Brooklyn, "an understaffed facility that is known for violence and harsh, very restrictive conditions." (See Sent. Tr. at 22-26.)

On August 19, 2024, Mr. Jackson filed a motion pursuant to 18 U.S.C. section 3582(c)(1)(A)(i) for a reduction of his sentence to time served. (Docket entry no. 112 (the "Motion").) On September 17, 2024, the Court denied the Motion without prejudice, noting, as the Government had in its opposition to the Motion, Mr. Jackson's failure to comply with the mandatory administrative exhaustion requirement of Section 3582(c)(1)(A). (See docket entry no. 116 ("First Gov't Ltr.") at 4-5; docket entry no. 118.)

On October 22, 2024, Mr. Jackson renewed his Motion (docket entry no. 120 (the "Renewed Motion")), raising the same grounds asserted in his initial Motion. Mr. Jackson argued in the Renewed Motion that he had by that time complied with Section 3582(c)(1)(A)'s mandatory exhaustion requirement, because (1) on September 18, 2024, Mr. Jackson submitted a request for compassionate release to the Warden of his facility, United States Penitentiary, Canaan ("USP Canaan"), which read in full, "I would like to be considered for Compassion Release by you"; and (2) following the Warden's denial of Mr. Jackson's September 18 request,

---

[3] Mr. Jackson represented at the time that the issues with curfew noncompliance stemmed from his multiple work obligations, "lack of timely public transportation, and efforts to care for his children." (Sent. Tr. at 24; PSR at 6.)

Mr. Jackson attempted to submit a more detailed request but "was not permitted to submit this application and . . . was informed by [Federal Bureau of Prisons ('BOP')] staff that his attorney needed to pursue any such application on his behalf."  (See Renewed Motion at 1-2; docket entry nos. 120-1, 120-2, 120-3.)  On October 25, 2024, the Court denied the Renewed Motion because Mr. Jackson had not exhausted his administrative remedies with respect to the grounds for relief asserted in his Motion and Renewed Motion.  (See docket entry no. 122.)

Now pending before the Court is Mr. Jackson's second renewed motion for a sentence reduction pursuant to Section 3582(c)(1)(A)(i), which is again premised on the grounds asserted in his initial Motion.  (Docket entry no. 123 ("Second Renewed Motion") at 2.)  Since his last filing, Mr. Jackson submitted a detailed application for a sentence reduction to the Warden of his facility, USP Canaan.  (Id. at 1; docket entry no. 123-1.)  This application was premised on the same grounds for relief asserted in the Motion and Renewed Motion, and was denied by the Warden on November 1, 2024.  (Second Renewed Motion at 1; docket entry nos. 123-2, 123-3.)  On November 18, 2024, the Government filed a short statement of its position on the Second Renewed Motion, continuing to oppose Mr. Jackson's requested relief on the merits, but stating that the Government "now believes that [Mr. Jackson] has met the administrative exhaustion requirement" of Section 3582(c)(1)(A).  (Docket entry no. 125 ("Second Gov't Ltr.").)

## Discussion

Section 3582(c)(1)(A) provides, in relevant part, that:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they

> are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 118-41).  "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A).  United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

The Court ordinarily considers (1) whether the defendant has exhausted his administrative remedies, or whether the Government has waived or forfeited this requirement, United States v. Saladino, 7 F.4th 120, 121-22 (2d Cir. 2021); (2) "the factors set forth in section 3553(a) to the extent they are applicable"; (3) whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction; and (4) whether the reduction sought is consistent with policy guidance from the U.S. Sentencing Commission.

In the current version of the Guidelines, which were amended in relevant part effective November 1, 2023, the Sentencing Commission has provided an amended policy statement outlining a number of circumstances that could, alone or in combination, amount to "extraordinary and compelling reasons" that warrant a reduction, including the defendant's age, medical, and family circumstances.  See U.S.S.G. § 1B1.13(b); see also, e.g., United States v. Sierra, No. 10-CR-416-VM, 2024 WL 1834081, at *2 (S.D.N.Y. Apr. 26, 2024) (explaining the history of, and statutory authority underlying, Section 1B1.13).  This amended policy statement, U.S.S.G. section 1B1.13, also includes a so-called "catch-all provision," which provides that "any other circumstance or combination of circumstances" similar in gravity to the reasons specified in paragraphs (1) through (4) of Section 1B1.13(b) could also, alone or in combination with such reasons, amount to an "extraordinary or compelling reason."  U.S.S.G. § 1B1.13(b)(5).

Mr. Jackson, whose projected release date is December 4, 2024 (Motion at 2), seeks a reduction of his imposed sentence to time served. Although the Government initially opposed Mr. Jackson's Motion both on the merits and due to Mr. Jackson's failure to exhaust his administrative remedies (see generally First Gov't Ltr.), the Government asserts in its most recent letter filing that it "now believes that [Mr. Jackson] has met the administrative exhaustion requirement" of Section 3582(c)(1)(A). (Second Gov't Ltr.) Because the Government no longer opposes Mr. Jackson's request for a sentence reduction on exhaustion grounds, the Court turns to the merits of Mr. Jackson's request. See Saladino, 7 F.4th at 121-22 (explaining that Section 3582(c)(1)(A)'s exhaustion requirement is a "claim-processing rule that may be waived or forfeited by the government").

"Extraordinary and Compelling Reasons"

Mr. Jackson advances three reasons as "extraordinary and compelling" circumstances warranting the requested reduction: (1) his incarceration has been more punitive than the Court intended (Motion at 6-8); (2) he has served more than 70% of his federal sentence (id. at 8-9); and (3) Mr. Jackson's partner, the sole caretaker of their two children, is suffering from a medical condition with symptoms that continue to worsen, which makes caring for their two young children increasingly difficult (id. at 9-10).

As to the first reason proffered, Mr. Jackson argues that, notwithstanding the Court's recommendations that Mr. Jackson be afforded an opportunity to participate in the BOP's Residential Drug Abuse Treatment Program ("RDAP") and that he be designated "to the nearest suitable facility in the New York City Metropolitan area that offers RDAP programming in order to support the maintenance of family ties," these opportunities were foreclosed to Mr. Jackson as

a result of his unrelated, concurrent sentence on a state conviction.[4]  (Motion at 1-3 (noting that Mr. Jackson is serving his sentence at USP Canaan, a high-security prison in Pennsylvania); id. at 6-8.)  Accordingly, Mr. Jackson asserts that his sentence has been more punitive than the Court intended.

The Court agrees.  The opportunity for Mr. Jackson to participate in RDAP and to serve his sentence in a location near his family were significant considerations of the Court in formulating Mr. Jackson's sentence.  (See Sent. Tr. at 34-35; J&C at 2.)  While the Court was aware of Mr. Jackson's pending state proceedings at the time of sentencing, the potential impact of a state conviction and concurrently imposed state sentence on these opportunities was not brought to the Court's attention.  (See generally Sent. Tr.); cf. also, e.g., United States v. Martinez-Rojas, 15-CR-348-ERK, 2023 WL 4867433, at *6 (E.D.N.Y. July 31, 2023) (finding carceral setting that was "harsher and more punitive than would otherwise have been the case" due to the COVID-19 pandemic to be a factor warranting reduction of the defendant's sentence (citation omitted)).

The Court is also persuaded that Mr. Jackson's family circumstances, as detailed in his initial Motion papers, rise to the level of an "extraordinary and compelling reason" consistent with Sentencing Commission policy guidance.  (See Motion at 9-10; docket entry no. 112-3 ("Bizhga Ltr.").)  Mr. Jackson's partner represents that her health issues are worsening, that these issues pose difficulties in caring for their two children, and that the lack of available alternative caregivers has prevented her from seeking the medical treatment that she needs to

---

[4]  The Government does not contest Mr. Jackson's representation that he is disqualified from participating in RDAP, which could entitle him to a reduction of his sentence of imprisonment of up to one year, due to his concurrent state sentence and detainer, nor that he was assigned to a high-security facility as a result of said detainer.  (Motion at 1-2; see also generally First Gov't Ltr.)

improve her condition.  (See Bizhga Ltr. at 1); see also U.S.S.G. § 1B1.13(b)(3) (providing examples of challenges to caretaking responsibilities that rise to the level of "extraordinary and compelling reasons"); id. § 1B1.13(b)(5) (providing that defendant may present any other circumstance or combination of circumstances that are similar in gravity to paragraphs (1) through (4) of Section 1B1.13(b)).

Section 3553(a) Factors

The Court also finds that the relevant sentencing factors set forth in 18 U.S.C. section 3553(a) weigh in favor of granting the modest request for a sentence reduction, which, as of the date of this Order, will result in Mr. Jackson being released from federal custody approximately two weeks before his projected release date.  Such a reduction will facilitate Mr. Jackson's prompt transfer to New York State custody, at which point he may be considered by the New York State Board of Parole for early release from his indeterminate one-and-half to three-year New York State sentence, which was imposed in September of 2023.  (Motion at 1-3 (explaining that Mr. Jackson's federal custody precludes consideration for early release from his state sentence).)

Although the nature of Mr. Jackson's offense and his prior criminal history were serious, as highlighted by this Court at sentencing and the Government in its opposition (see Sent. Tr. at 17-18, 22-25; First Gov't Ltr. at 1-3, 7-8), the Court credits Mr. Jackson's continued positive trajectory post-sentencing.  As detailed in his initial Motion papers, Mr. Jackson has sustained zero disciplinary infractions for the duration of his sentence served thus far, and he represents that he has completed "numerous education courses, enrolling in substance abuse programming, and engaging in work assignments while incarcerated," demonstrating his commitment to rehabilitation.  (Motion at 2, 10-11; docket entry no. 112-2.)  The Court is also

persuaded that any remaining concerns regarding deterrence and protection of the public are substantially mitigated by the fact that Mr. Jackson will be released into state custody,[5] rather than into the community. (Motion at 11); see also United States v. Correa, No. 08-CR-1026-VEC, 2020 WL 7490098, at *7 (S.D.N.Y. Dec. 21, 2020) (finding that six-month early release from federal custody into state custody did not undermine the need to protect the public from the possibility of further criminal conduct by the defendant).

CONCLUSION

For the foregoing reasons, Mr. Jackson's Second Renewed Motion is granted, and his sentence imposed as to Count One is reduced to time served. This Order resolves docket entry no. 123.

SO ORDERED.

Dated: New York, New York
November 19, 2024

/s/ Laura Taylor Swain
Laura Taylor Swain
Chief United States District Judge

---

[5] The Government does not dispute Mr. Jackson's assertion that he will be released to state custody.