UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

-v- No. 21-CR-537-LTS

KENDALL JACKSON,

Defendant.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

An evidentiary hearing regarding alleged violations of supervised release is scheduled to commence at 10:00 A.M. on Wednesday, October 7, 2026. The Government has moved in limine to admit hearsay evidence and evidence of Mr. Jackson's alleged prior acts. (Docket entry no. 178 ("Gov't Ltr.").) Defendant opposes the Government's motion and also requests that the Court require the Government to prove beyond a reasonable doubt that Mr. Jackson violated his conditions of supervised release. (Docket entry no. 180 ("Def. Resp."); docket entry no. 179 ("Def. Ltr.").) The Government opposes Defendant's request. (Docket entry no. 181 ("Gov't Resp.").) The Court has considered carefully each of the parties' submissions. For the following reasons, the Court grants in part and denies in part the Government's motion in limine, and the Court denies Defendant's request regarding the Government's burden of proof.

## I. BACKGROUND

The Government identifies two alleged incidents that will be the focus of its presentation at the evidentiary hearing. (See Gov't Ltr. at 2.) The Government alleges that Mr. Jackson assaulted and imprisoned a female victim ("Victim-1") in her car on November 23, 2025 (the "November 2025 Incident"). (Id.) The Government also alleges that Mr. Jackson assaulted

a second female victim ("Victim-2") at a lounge on March 22, 2026 (the "March 2026 Incident"). (Id.)

As part of its expected proof, the Government has provided body-worn camera ("BWC") footage taken from New York City Police Department ("NYPD") officers responding to the November 2025 Incident. (Ex. A (depicting NYPD officer interactions with Victim-1); Ex. B (depicting NYPD officer interactions with Mr. Jackson).) The Government moves to admit Victim-1's hearsay statements, as captured in this BWC footage, as evidence under the excited utterance and present sense impression exceptions to the Federal Rules of Evidence, FED. R. EVID. 803(1)-(2), as well as for good cause under Federal Rule of Criminal Procedure 32.1(b)(2)(C). (Gov't Ltr. at 7-10.)

Additionally, the Government expects to offer Victim-2's testimony, including details about alleged assaults committed by Mr. Jackson against Victim-2 prior to the March 2026 Incident. The Government, while noting that the Federal Rules of Evidence are not strictly applicable at revocation hearings, see FED. R. EVID. 1101(d)(3), argues that such evidence is admissible under Rule 404(b), as the prior assaults would demonstrate a pattern of activity relevant to determining the intent element of the specifications Mr. Jackson faces. (Gov't Ltr. at 10-11.) The Government also plans to tender documentary evidence of Victim-2's medical records, asserting that Rule 803(4) would allow the admission of any of her hearsay statements contained in such records. (Id. at 7.)

## II. DISCUSSION

### A. Evidentiary Standard in Revocation Proceedings

Apart from the rules governing privileges, "[n]either the Federal Rules of Evidence nor the Sixth Amendment's Confrontation Clause apply with full force in a revocation

proceeding." United States v. Diaz, 986 F.3d 202, 209 (2d Cir. 2021); see FED. R. EVID. 1101(d)(3). Accordingly, Rule 802's general prohibition on the admission of hearsay is not applicable. Federal Rule of Criminal Procedure 32.1, however, requires that a defendant be given "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." FED. R. CRIM. P. 32.1(b)(2)(C). "To determine whether good cause [to deny that opportunity by admitting hearsay evidence] exists, 'the court must balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay.'" United States v. Peguero, 34 F.4th 143, 154 (2d Cir. 2022) (quoting United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006)).

Federal Rule of Evidence 404(b), governing the admission of prior act evidence, does not strictly apply to revocation proceedings either. See United States v. Edwards, 834 F.3d 180, 200 n.16 (2d Cir. 2016). The Federal Rules of Evidence "nevertheless provide some useful guidelines to ensure that any findings made by a district court at such hearings are based on 'verified facts' and 'accurate knowledge.'" United States v. Bari, 599 F.3d 176, 179 (2d Cir. 2010) (quoting Morrisey v. Brewer, 408 U.S. 471, 484 (1972)).

B. The Hearsay Statements

1. BWC Footage

The Court has reviewed the BWC footage provided by the Government and will admit certain portions of Victim-1's hearsay statements captured therein under the principles animating the excited utterance exception of Rule 803(2) of the Federal Rules of Evidence. Specifically, all of Victim-1's statements captured in Exhibit A from the 19:45 timestamp to the end of the video will be admitted. The Court reserves judgment on the remainder of Victim-1's

statements captured prior to that timestamp, and notes Victim-1's apparently calm demeanor during the earlier period, as well as the parties' arguments regarding the amount of time that may have elapsed before Victim-1 went to the police station.

Federal Rule of Evidence 803(2) provides that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," is not excluded by the rule against hearsay. The excited utterance exception recognizes that fabrication is less likely while the declarant is under the stress of an event or condition prompting the statement. See United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002). "An excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998). Rather, "[t]he length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), 'under the stress of excitement caused by the event or condition.'" Jones, 299 F.3d at 112 (alteration in original) (quoting United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir.1990)).

Having reviewed the BWC footage, the Court is persuaded that, at the time Victim-1 spoke to NYPD officers after returning to her car, she was under the stress of excitement caused by her altercation with Mr. Jackson. Beginning at the 19:45 timestamp, Victim-1 expresses dismay upon discovering the damage done to her windshield wiper knob. (See, e.g., Ex. A at 19:45-19:56 ("Look at what he did. He broke this. . . . Look, it's broken!").) She then proceeds to tearfully recount to the police the details of the alleged altercation with Mr. Jackson, which took place in her car. (Id. at 21:30-24:30.)

The Defense argues that Victim-1's statements "were the product of reflective thought, not excitement." (Def. Resp. at 6.) The video footage contradicts this contention.

Victim-1 is visibly distraught while making her statements from the 19:45 timestamp onward. The Defense also asserts that, "[t]o the extent [Victim-1] is upset at this point, it is because the police won't let her leave and return to her child, not because of any action allegedly taken by Mr. Jackson." (Id.) Again, the video footage belies this contention. Victim-1 became upset after discovering the damage Mr. Jackson allegedly inflicted upon her car during and after their altercation. Her statements establish the connection between her distress, the damage to her car, and the alleged physical altercation with Mr. Jackson. That connection is sufficient for the hearsay exception to apply. See also United States v. Anderson, No. 24-CR-9-LTS, 2025 WL 3034173, at *1 (S.D.N.Y. Oct. 30, 2025) (admitting BWC footage for similar reasons). The Defense proffers various reasons to disbelieve Victim-1 (Def. Ltr. at 6), but these issues affect weight rather than admissibility, which has been established through Victim-1's excited condition.

2. Medical Records

Federal Rule of Evidence 803(4) provides that statements "made for — and [are] reasonably pertinent to — medical diagnosis or treatment" and "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause" are not excluded by the rule against hearsay. The Government states that, "[t]o the extent the records contain Victim-2's out-of-court statements concerning her medical condition, the Government would seek to offer them as statements made for medical diagnosis or treatment under Rule 803(4)." (Gov't Ltr. at 7.) The Government, as of yet, has not identified any medical records containing statements from Victim-2. The Court therefore reserves decision on any such statements until the Government offers them for admission.

C. Prior Acts Evidence

In support of its motion to admit Victim-2's testimony regarding Mr. Jackson's alleged prior assaults against her, the Government asserts that such testimony is relevant to proving the intent element of Specification 12, which charges Mr. Jackson with strangulation in the second degree in violation of New York Penal Law section 121.12. The Defense has objected to the admission of this evidence based on Rule 404(b)'s prohibition on propensity evidence as well as Rule 403's exclusion of evidence whose "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Rule 404(b) of the Federal Rules of Evidence prohibits the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). The rule allows such evidence for non-propensity purposes, including to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. 404(b)(2). "In this regard, evidence of prior convictions merits particularly searching, conscientious scrutiny." United States v. McCallum, 584 F.3d 471, 476 (2d Cir. 2009).

In the absence of a specific dispute regarding the intent of any alleged contact with Victim-2, the Government has failed to show that any probative value of introducing Mr. Jackson's prior crimes, wrongs, or acts would not be substantially outweighed by the risk of undue prejudice. Although the Government is correct in its assertion that this Circuit takes an "inclusionary approach" to the application of Rule 404(b), permitting the admission of prior act evidence "that does not serve the sole purpose of showing the defendant's bad character" (Gov't

Ltr. at 10 (quoting United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011)), the Government has not shown that there is any particular dispute regarding Mr. Jackson's intent whose resolution would be aided by the admission of such evidence. See McCallum, 584 F.3d at 475 ("[T]his inclusionary approach does not invite the government 'to offer, carte blanche, any prior act of the defendant in the same category of crime.'" (quoting United States v. Garcia, 291 F.3d 127, 137 (2d Cir. 2002))). This absence of a particular dispute is especially notable in light of the Defense's representation that it "is not arguing that Mr. Jackson strangled [Victim-2] without the requisite intent or by accident; it is arguing that this alleged incident never happened." (Def. Resp. at 10.) The Government's conclusory assertions that the prior acts demonstrate a "pattern" that are necessary for a "broader understanding of Victim-2's relationship with the defendant" (Gov't Ltr. at 10) are not sufficient, on the current record, to warrant admission of the testimony.

Even if such evidence, at this juncture, were admissible under Rule 404(b), the balancing principles of Rule 403 counsel its exclusion. See McCallum, 584 F.3d at 476 ("[P]rior convictions should not be admitted unless the court has carefully conducted the Rule 403 balancing test . . . ."). Because intent does not currently appear to be at issue, the probative value of the Government's proffered evidence appears to be minimal. Conversely, the risk of prejudice stemming from first-person victim accounts of incidents that took place in 2014, 2015, and 2021 — between five and twelve years ago — substantially outweighs any probative value on the issue of Mr. Jackson's intent in 2026. See Garcia, 291 F.3d at 138 ("The length of time between the events . . . detract[s] from any potential probative value of the prior conviction.")

The Court, accordingly, denies the Government's motion in limine for admission of prior acts evidence, without prejudice to renewal at the evidentiary hearing.

D. Burden of Proof

The Court, lastly, considers Defendant's request that the Court impose a heightened burden of proof on the Government. Under 18 U.S.C. section 3583(e), a court may revoke a term of supervised release upon finding "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). The Defense, however, asserts that "the Court should exercise its discretion" to apply the traditional standard applicable to criminal prosecutions — beyond a reasonable doubt. (Def. Ltr. at 1.) Referencing then-Chief Judge Underhill's dissent in Peguero, the Defense argues that "a supervisee facing potential imprisonment for new alleged unlawful conduct while on supervised release should, in any revocation proceeding, receive 'the full panoply of rights that attend a new felony prosecution,' including 'the right to be proven guilty beyond a reasonable doubt.'" (Id. at 2 (quoting Peguero, 34 F.4th at 178 (Underhill, C.J., dissenting)).)

As the majority in Peguero explained, this position is contrary to binding Second Circuit precedent requiring the application of the preponderance standard in revocation hearings. Peguero, 34 F.4th at 147. "Because the defendant already stands convicted of a crime, the government is not 'put to the burden of an adversarial criminal trial.'" Diaz, 986 F.3d at 208 (quoting United States v. Carlton, 442 F.3d 802, 809 (2d Cir. 2006)). As demonstrated above, the Court will exercise discretion in assessing the reliability of evidence proffered by the Government "to ensure that any findings made . . . are based on 'verified facts' and 'accurate knowledge.'" Bari, 599 F.3d at 179 (quoting Morrisey, 408 U.S. at 484). The Court has no discretion, and perceives no valid reason, to deviate from the preponderance standard of section 3583(e). The Defense's request is therefore denied.

## III. CONCLUSION

For the foregoing reasons, the Government may present its exhibits and witness testimony at the evidentiary hearing for the purposes stated above. The parties are directed to file, by **4:00 PM on October 5, 2026**, a joint letter providing the Court with (1) an agenda outlining the anticipated presentation of witnesses and other evidence and argument, and the estimated time required for each portion of the hearing; (2) a witness list, in order; (3) an exhibit list noting any anticipated further objections; and (4) any stipulated facts. Docket entry nos. 178 and 179 are resolved.

SO ORDERED.

Dated: New York, New York
October 2, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge